**GENERAL AMERICAN TRANSPORTATION CORPORATION, Plaintiff,**

v.

**CRYO–TRANS, INCORPORATED, Defendant.**

**CRYO–TRANS, INCORPORATED, Counterclaim–Plaintiff,**

v.

**GENERAL AMERICAN TRANSPORTATION CORPORATION, Counterclaim–Defendant.**

**No. 91 C 1305.**

United States District Court, N.D. Illinois, Eastern Division.

Sept. 1, 1995.

Kenneth J. Jurek, Rosanne J. Faraci, Michele Odorizzi, Damian Gilmary Wasserbauer, Mayer, Brown & Platt, Chicago, IL, Scott William Petersen, Thomas Irving Ross, Randall Thomas Erickson, Hill, Steadman & Simpson, Chicago, IL, for plaintiff.

Kenneth E. Rechtoris, Carol Ann Genis, Bell, Boyd & Lloyd, Chicago, IL, James P. Donohue, Bruce A. Kaser, Miller, Nash, Wiener, Hager & Carlsen, Seattle, WA, David S. Abrams, Mark S. Bicks, Darle M. Short, Roylance, Abrams, Berdo and Goodman, Washington, DC, for defendant.

## *MEMORANDUM OPINION AND ORDER*

CASTILLO, District Judge.

Currently pending before this Court is a motion by plaintiff General American Transportation Corporation ("GATC"), pursuant to Fed.R.Civ.P. 52(b) and 59(e) to amend and supplement the Court's findings and judgment of July 14, 1995. Specifically, GATC's motion seeks to have this Court address three discrete area's of this Court's Memorandum Opinion: (1) to clarify and/or amend the Court's findings with respect to amount of damages awarded to Cryo–Trans, Incorporated ("Cryo–Trans") on the basis of GATC's patent infringement; (2) to amend the language concerning the form and scope of the permanent injunction order entered by the Court; and (3) to make additional findings with respect to relevant prior art and GATC's claim of inequitable conduct. GATC's motion is granted, in part, and denied, in part, as fully set forth in this opinion. The Court will address each of the three subjects of the pending motion in the order addressed by GATC. Lastly, this opinion will also address the Bill of Costs sought by Cryo–Trans.

### *The Damages Awarded to Cryo–Trans*

■ This Court awarded Cryo–Trans total lost profit damages of $8,920,732 (7/14/95 Mem.Op. ¶ 39). GATC complains that this award should be reduced because this Court also enjoined GATC from any further patent infringement. GATC asserts that Cryo–Trans has admitted that its lost profit damages, in the event of an injunction, would be limited to $2,069,157 plus price erosion damages of $562,157 as found by the Court, prejudgment interest and any additional lost profits for the one-month extension of the effective date of the injunction to September 1, 1995.

At trial, Cryo–Trans principally relied on the testimony and declarations of Aron Levko, a principal in the firm of Coopers & Lybrand, to establish damages. In Mr. Levko's post-trial declaration to the Court he included three separate damage scenarios: (1) Scenario #1 assumed that the Court would not enjoin GATC and calculated damages as totaling $17,631,422; (2) Scenario #2

assumed that the Court would enjoin GATC and calculated damages as totaling $15,250,-813; (3) Scenario # 3 assumed that the Court would not enjoin GATC from continuing to lease the 80 cryogenic railcars now in service but would prohibit GATC from placing 30 additional cars into service and calculated damages as totaling $17,208,772.

GATC relied on the testimony of its expert witness, Raymond Sims, at trial. Mr. Sims analyzed Cryo–Trans' potential damages by making three assumptions—all of which have proven to be true. Mr. Sims assumed that the disputed patent was valid, that GATC would be found to have infringed the patent and that an injunction would be entered at the conclusion of the trial. (Tr. 1127). Mr. Sims admitted that Cryo–Trans should be made whole and placed in the position that it would have been but for the infringement. (Tr. 1128). These damages would have included lost profits and some element of price erosion and were conservatively estimated by Mr. Sims to total $1.9 million. (Tr. 1128–1129).

The Court in its July 14, 1995 Memorandum Opinion rejected portions of all of the parties' alternative damage scenarios.[1] Instead, the Court awarded lost profits of $8,920,732 and rejected Cryo–Trans' additional price erosion damages as speculative. This Court specifically stated that based, in part, on the Court's injunction against GATC's further use of all of its infringing cryogenic railcars, it found that Cryo–Trans' additional price erosion damages of $7,926,-259 for further price erosion on its potential future leases was speculative and unsupported by the preponderance of the evidence. (7/14/95 Mem.Op. ¶ 40).[2]

GATC's post-trial motion correctly notes that this Court relied on Mr. Levko's Scenario # 1 calculations in deciding the appropriate damages in this case. The Court's current total damage award of $9,705,172 is the sum of lines I(A), I(B), II(A)(1) and III(A) of Scenario 1. The Court's use of these figures was its best estimate of the damages that would adequately compensate Cryo–Trans for GATC's infringement. *Rite–Hite Corp. et al. v. Kelley Company, Inc.*, 56 F.3d 1538, 1544 (Fed.Cir.1995); *SmithKline Diagnostics v. Helena Laboratories*, 926 F.2d 1161, 1164 (Fed.Cir.1991). However, because the Court recognizes that Mr. Levko's Scenario # 1 calculations were based on the express premise that an injunction would not issue and because this Court still believes that the issuance of an injunction is a proper remedy in this case, this Court has decided to revise its award of damages to eliminate the internal inconsistency in using Mr. Levko's Scenario # 1 calculations. Therefore, this Court has decided to modify paragraphs 39 through 42 of its July 14, 1995 Memorandum Opinion. These paragraphs of the opinion will be replaced by the following paragraphs:

39. This Court expressly credits the testimony of Cryo–Trans' damage expert Aron Levko as setting forth reasonable assumptions about the extent of infringement damages suffered by Cryo–Trans. In particular, this Court finds that the lost profits on GATC leases of F Plate cars which infringe the '876 Patent are $2,144,-363. This Court further finds that Cryo–Trans has suffered price erosion damages as a result of GATC's infringement. Specifically, this Court finds that price erosion damages are appropriately awarded to Cryo–Trans because it will not be able to instantly lease replacement cars to the relevant companies on September 1, 1995 and there is a reasonable likelihood that the price it previously secured for its

---

1. This Court's July 14, 1995 opinion, just like the parties' pre and post-trial briefs, devoted the vast majority of its opinion to issues of patent validity and infringement rather than the appropriate damages. Additionally, this Court felt somewhat constrained about setting forth its full damages analysis in its published opinion because this material has been deemed confidential by the parties in this case. However, because it is clear that the issue of damages is one of several issues that will be reviewed by the federal circuit court of appeals, this Court has decided to elaborate on its damages analysis herein.

2. Despite GATC's arguments to the contrary, this finding did not mean that the Court had rejected all of Cryo–Trans' additional requested price erosion damages. This finding merely indicated that the $7,926,259 figure was not appropriate under the circumstances.

cars will be negatively impaired by GATC's prior infringement. (Tr. 293, 683, 685, 1144). Therefore, the Court finds Cryo–Trans has suffered price erosion damages of $3,024,052 on the current GATC leases of infringing F Plate cars; price erosion damages of $1,476,855 on the leased but not yet placed infringing GATC F Plate cars; price erosion damages of $567,954 on its current leases of F Plate cars; price erosion damages of $502,738 on its further lease renewal of F Plate cars; and price erosion damages of $1,030,273 on its future renewal of leases of its C Plate cars. (8/7/95 Supp.Declaration of A. Levko, Scenario # 2; Schedules B–1, B–2, C–1, C–3 and C–4). The total damages suffered by Cryo–Trans are hereby determined by this Court to be $8,746,235. The Court specifically rejects some of the damage calculations made by GATC's expert, Mr. Sims, as being unduly conservative and unreasonable (Pl.'s Ex. HT).

40. With the elimination of GATC from the market on September 1, 1995, the Cryo–Trans car will become the most economical way to transport frozen foods. (Tr. 768–69). Because of this fact, as well as the Court's injunction against GATC's further use of all of its infringing cryogenic railcars, this Court finds that Cryo–Trans' additional price erosion damages of $6,486,093 for price erosion on Cryo–Trans' leases on F Plate cars based on anticipated growth occurring between 1996 and 2004 is speculative and unsupported by a preponderance of the evidence. (8/7/95 Supp.Declaration of A. Levko, Scenario # 2; Schedule D–3).

41. Prejudgment interest, at a rate of 7.54%, as the parties have agreed, is appropriate. Therefore, the Court awards prejudgment interest of $237,205. (8/7/95 Supp.Declaration of A. Levko, Scenario # 2; Schedule F).

42. Total damages suffered as a result of the infringement by GATC consisting of lost profits, price erosion and prejudgment interest amount to $8,983,440.

### Scope Of The Court's Injunction

The injunction entered by this Court on July 14, 1995 merely stated that GATC was "permanently enjoined from any further infringement of the '876 Patent". (7/14/95 Mem.Op. ¶ 44). GATC asserts that this injunction is too broadly worded and thereby offends Fed.R.Civ.P. 65(d). See KSM Fastening Systems, Inc. v. H.A. Jones Co., Inc., 776 F.2d 1522, 1526 (Fed.Cir.1985). GATC asserts that this Court's injunction should only prohibit the manufacture, use or sale of the specific GATC Arcticar which this Court found to be infringing. GATC intimates that, despite this Court's July 14, 1995 Memorandum Opinion, it may seek to undertake a further "colorable variation" of the '876 Patent. The Court expressly warns GATC that any further infringing activity may place GATC at risk of contempt. See KSM Fastening Systems, Inc., 776 F.2d at 1527. Nevertheless, in recognition of some valid concerns raised by GATC this Court hereby modifies Paragraph 44 of its July 14, 1995 Memorandum Opinion as follows:

44. In accordance with this opinion, the Clerk of the Court is directed to enter judgment in favor of defendant Cryo–Trans on plaintiff GATC's claim for declaratory judgment pursuant to 28 U.S.C. § 2201 with respect to the enforceability of the '876 Patent. The Clerk of the Court is also directed to enter judgment in the amount of $8,983,440 in favor of defendant Cryo–Trans with respect to its counterclaim for infringement of Claims 1, 2 and 3 of the '876 Patent pursuant to 35 U.S.C. § 281. Pursuant to this judgment, effective as of September 1, 1995 and until such time as U.S. Patent No. 4,704,876 expires, General American Transportation Corporation is permanently enjoined from making, using, leasing or selling, without authorization, right or license, cryogenic refrigerated railcars of a structure adjudicated in this case to infringe

Claims 1, 2 and 3 of United States Patent No. 4,704,876.

*GATC's Request For Additional Findings of Fact*

Fed.R.Civ.P. 52(b) "provides for post-judgment motions for findings not made". GATC expressly notes that the Federal Circuit has encouraged appellants to request additional findings under this rule to head off a possible remand by the Court for incomplete findings. *See Consolidated Aluminum Corp. v. Foseco Int'l Ltd.*, 910 F.2d 804, 814 n. 9 (Fed.Cir. 1990). After careful consideration of GATC's request under Fed.R.Civ.P. 52(b) this Court hereby modifies Paragraph 30 of the Findings of Fact of its July 14, 1995 Memorandum Opinion as follows:

30. There is a dispute as to how the sublimated $CO_2$ gas would flow in the AFFX 2002. Many of the people involved in developing the AFFX 2002, including Messrs. Hill, Couture, Habel and Barron, believed that its $CO_2$ gas would drop down the sidewall nearest the bunker toward the aluminum floor racks, pass through the gaps between the slats on the aluminum floor racks beneath the load, and then go up on the opposite sidewall of the car and over the top of the load. (Tr. 87–88; Def.'s Ex. 233 ¶ 14; Tr. 445; Habel Dep. at 148; Barron Dep. at 18). Mr. Fink, who also was involved in the design of the AFFX 2002, however, believed that the gas would flow on top of the load and go down both sidewalls. (Tr. 849). This theory of gas flow is contrary to what is claimed as the gas flow in the Fink and Habel Patent. (Pl.'s Ex. DF; Tr. 858). While GATC's in-court demonstration was of interest in trying to determine through the use of a sim-

ulated model how the AFFX 2002 actually may have worked, (Pl.'s Ex. HK), it is not entitled to much weight because it does not answer the question of how the relevant persons in the art believed the AFFX 2002 worked during the relevant time period. *The Court, therefore, finds that GATC failed to demonstrate by clear and convincing evidence that Ralph Hill or the others involved with AFFCAR understood that the AFFX 2002 worked differently than as disclosed in the Fink and Habel Patent.*

This Court has expressly concluded that no other additional findings of fact need be made to its July 14, 1995 Memorandum Opinion.[3] The Court also specifically finds that the trial testimony concerning David Burgener did not in any way materially affect its judgment in this case. While there is some trial testimony that a reverse-flow channel arrangement was given to Ralph Hill by David Burgener prior to Mr. Hill's patent application (Tr. 1030; 1033–35; Pl.'s Ex. FH) there is no evidence establishing that this drawing was intentionally or unintentionally withheld from the Patent Office. Moreover, given this Court's overall factual findings concerning prior art and inequitable conduct, the overall relevance of the reverse-flow channel arrangement is marginal at best. Mr. Burgener did not claim that a reverse-flow floor channel was his invention. (Tr. 1083). Simply put, GATC failed to demonstrate by clear and convincing evidence that Mr. Burgener's drawing was material to any claim concerning the '876 Patent.

*Bill Of Costs*

 Under Fed.R.Civ.P. 54(d) the presumption is that the prevailing party will recover costs, and the ultimate decision to award costs is within the court's discretion.

---

**3.** The new legal and factual determinations made herein do not in any way change this Court's analysis that a patent infringement occurred in this case. In fact, the recent case of *Hilton Davis Chemical Co. v. Warner–Jenkinson Co., Inc.*, 62 F.3d 1512 (Fed.Cir.1995) further supports this Court's conclusion that a patent infringement under the doctrine of equivalents occurred in this case. The *Hilton Davis* Court noted that mere colorable differences, such as are present in this

case, cannot displace the patent rights of an original inventor. 62 F.3d at 1516–17 quoting Chief Justice Story in *Odiorne v. Winkley*, 18 F.Cas. 581, 582 (C.C.D.Mass.1814) (No. 10,432). Furthermore, the *Hilton Davis* Court reiterated that evidence of copying, such as occurred in this case, is extremely relevant to an analysis of infringement under the doctrine of equivalence without any requirement of proving bad faith.

*Finchum v. Ford Motor Co.,* 57 F.3d 526, 533 (7th Cir.1995). Cryo–Trans seeks total costs of $25,916.70. This Court, based on its experience, finds that the costs sought by Cryo–Trans in view of the complexity and length of this litigation are eminently reasonable. The Court, however, will sustain GATC's objections to the $1,210.00 in costs relating to the physical inspection of the Cryogenic railcars. Thus, the Court hereby awards total costs of $24,706.00 to Cryo–Trans.