**GENERAL AMERICAN TRANSPORTATION CORPORATION Plaintiff–Appellant,**

v.

**CRYO-TRANS, INCORPORATED, Defendant–Appellee.**

No. 95–1531.

United States Court of Appeals, Federal Circuit.

Aug. 14, 1996.

Rehearing Denied; Suggestion for Rehearing In Banc Declined Oct. 10, 1996.

Kenneth J. Jurek, McDermott, Will & Emery, Chicago, Illinois, argued, for plaintiff-appellant. With him on the brief was Rosanne J. Faraci.

Bruce A. Kaser, Miller, Nash, Wiener, Hager & Carlsen, Seattle, Washington, argued, for defendant-appellee. With him on the brief was James P. Donohue.

Before MAYER, LOURIE, and SCHALL, Circuit Judges.

LOURIE, Circuit Judge.

General American Transportation Corp. ("GATC") appeals from the judgment of the United States District Court for the North-ern District of Illinois in which the court held GATC liable for patent infringement, awarded Cryo–Trans, Inc. $8,983,440 in damages, and entered a permanent injunction against GATC. *General Am. Transp. Corp. v. Cryo–Trans, Inc.*, 897 F.Supp. 1121 (N.D.Ill.1995); *General Am. Transp. Corp. v. Cryo–Trans, Inc.*, 893 F.Supp. 774 (N.D.Ill.1995). Because the court correctly held that the patent was not proved invalid, but misconstrued the claims and clearly erred in finding infringement, we affirm in part and reverse in part.

## BACKGROUND

Cryo-Trans is the assignee of U.S. Patent 4,704,876, which concerns a "cryogenic" railcar for transporting frozen foods. Cryogenic railcars use inexpensive carbon dioxide ($CO_2$) as the refrigerant. Conventional refrigerated railcars, on the other hand, employ mechanical refrigeration systems that consume fossil fuels and thus are more expensive to operate.

The cryogenic railcar disclosed in the '876 patent has an insulated compartment (32) extending lengthwise along the top of the car. A system is provided for filling the compartment with solid carbon dioxide "snow" by injecting liquid $CO_2$ into the compartment under high pressure. The bottom of the compartment contains openings (66) adjacent to each of the car's side walls (16, 18) and end walls (20, 22). In operation, the compartment is first filled with $CO_2$ snow and then the frozen food products are loaded into the cargo area (26). During transit, the $CO_2$ snow gradually sublimates as $CO_2$ gas, which flows through the compartment's openings (66) and moves downward along the side walls and end walls, enveloping and cooling the load. Each of the four walls has corrugated channels to facilitate the flow of the $CO_2$ gas down that particular wall. Figure 1 of the patent illustrates the railcar:

FIG. I

Claim 1 is representative of the asserted claims. It reads, with emphasis on the language in dispute, as follows:

1. In a container adapted to be maintained in a refrigerated condition from the sublimation of carbon dioxide snow[,] the combination comprising:

a storage area defined by a floor, a pair of opposed side walls, a pair of opposed end walls, and a ceiling means;

an insulated roof positioned above said ceiling means and defining therewith a compartment for supporting a supply of carbon dioxide snow, said compartment extending substantially the full length of said storage area;

means in said compartment for forming carbon dioxide snow and means for connecting said carbon dioxide snow forming means to a supply of liquid carbon dioxide;

*a plurality of openings through said ceiling means adjacent [sic] each of said side walls and end walls* for permitting the flow of sublimated carbon dioxide gas from said compartment;

each of said walls being corrugated to define a plurality of channels therein opensided toward the interior of the container whereby said carbon dioxide gas may flow from said openings in said ceiling means downwardly through said channels between said walls and a product load disposed in said container toward said floor.

Numerous cryogenic railcars were known before the invention at issue here. The "AFFX 2002" railcar, for example, which was built and publicly used in 1983, embodied all the elements of claim 1 except that its compartment for holding $CO_2$ snow had openings adjacent to only *one* side wall and it had no openings adjacent to the end walls. U.K. Patent 399,678, issued to Kurth in 1933, disclosed a cryogenic railcar in which a compartment for holding solid $CO_2$ had openings adjacent to both side walls, but again had no openings adjacent to the end walls. It also had no corrugated walls or system for forming $CO_2$ snow using liquid $CO_2$.

GATC manufactured a cryogenic railcar that included a compartment for holding $CO_2$ snow. The bottom of the compartment had a row of openings provided lengthwise along its center and two rows of openings adjacent to the car's opposite side walls. The openings adjacent to the side walls were each three inches from the nearest side wall, and the endmost of such openings were three feet from the nearest end wall. The endmost

center row openings were six feet from the nearest end wall. The drawing below illustrates the arrangement of openings in GATC's railcar compartment:

Side Wall

End Wall

Side Wall

In March 1991, after Cryo–Trans threatened to assert the '876 patent against GATC, GATC sued Cryo–Trans seeking, *inter alia*, a declaratory judgment that the patent was invalid, unenforceable, and not infringed. GATC argued that it did not infringe because the bottom of the compartment in its railcar lacked openings adjacent to the car's end walls, as required by the claims. Cryo–Trans counterclaimed for infringement of claims 1–3.

The district court conducted a bench trial in May 1995. At the conclusion of the trial, the court, relying on a dictionary definition, construed the term "adjacent" in the claims to mean "not far off" or "not necessarily at but nearby or near." The court then found that the endmost openings adjacent to the side walls in GATC's railcar compartment were "not far" from the car's end walls and functioned as openings adjacent to the end walls. Thus, the court found that GATC had infringed the claims, both literally and under the doctrine of equivalents. It rejected GATC's invalidity and unenforceability claims. The court accordingly awarded Cryo–Trans $8,983,440 in damages and entered a permanent injunction.

GATC appeals, challenging the district court's findings that the '876 patent was infringed and not proved invalid. GATC does not appeal the court's decision rejecting GATC's unenforceability claim.

## DISCUSSION

### A. *Infringement*

Determining whether a patent claim has been infringed requires a two-step analysis: "First, the claim must be properly construed to determine its scope and meaning. Second, the claim as properly construed must be compared to the accused device or process." *Carroll Touch, Inc. v. Electro Mechanical Sys., Inc.*, 15 F.3d 1573, 1576, 27 USPQ2d 1836, 1839 (Fed.Cir.1993). Claim construction is a question of law, reviewed *de novo* on appeal. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979, 34 USPQ2d 1321, 1329 (Fed.Cir.1995) (in banc), *aff'd*, —— U.S. ——, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996). The application of the claim to the accused device is a question of fact, reviewed for clear error. *Mannesmann Demag Corp. v. Engineered Metal Prods. Co.*, 793 F.2d 1279, 1282, 230 USPQ 45, 46 (Fed.Cir.1986).

GATC argues that the district court misconstrued the claim language "openings through said ceiling means adjacent to each of said side walls and end walls," which led to a clearly erroneous finding of infringement. We agree. As explained below, the district court incorrectly held that openings "adjacent" to the side walls could also be considered to be openings "adjacent" to the end walls. That error led to a clearly erroneous finding of infringement.

To ascertain the meaning of the claims, we consider the claim language, the specification, and the prosecution history. *Markman*, 52 F.3d at 979, 34 USPQ2d at 1329. Here, the claim language itself distin-

guishes between the openings that are adjacent to the side walls and those that are adjacent to the end walls. Specifically, the claims require "openings ... adjacent *each of* said side walls and end walls," which suggests that the openings adjacent to the side walls are structurally distinct from the openings adjacent to the end walls. The district court's claim construction obliterated that distinction.

In addition, the patent specification distinguishes between the openings that are adjacent to the side walls and those that are adjacent to the end walls. It states, in the "Summary of the Invention" section, that "[t]he bottom of the compartment is provided with openings *along each side and end wall* of the car through which sublimating carbon dioxide gas may escape." Col. 2, ll. 22–25 (emphasis added). Similarly, the "Detailed Description of the Invention" portion of the specification states:

> The bottom wall 40 of the compartment 32 is provided with a plurality of openings 66 *along each of the side walls 16, 18 and along each end wall 20, 22 of the car* and which openings are preferably slanted *toward the adjacent wall.* These openings are provided for the flow of carbon dioxide gas sublimating from the snow contained within the compartment 32 and which *gas may then flow downwardly along the adjacent wall* through the sinusoidal passageways defined thereby. The openings on opposite walls preferably are offset with respect to each other.

Col. 3, ll. 41–51 (emphasis added). This arrangement of openings is said to yield an advantage: "[B]ecause the cold *carbon dioxide gas is flowing downwardly on each of the opposite sides and on the ends of the car* and in direct contact with the bottom of the load, all parts of the load will be maintained at a desirably low temperature." Col. 5, ll. 59–64 (emphasis added). Figure 1, to which the detailed description refers, depicts separate openings (66) adjacent to each of the side and end walls. Carbon dioxide gas is shown exiting each opening and travelling down the nearest wall.

Thus, the specification and drawings teach that the openings are provided along all four

walls, and that each opening directs the flow of CO₂ gas down a particular, "adjacent" wall, *i.e.,* the nearest wall. This is not just the preferred embodiment of the invention; it is the *only* one described. Nothing in the claim language, specification, or drawings suggests that any of the dedicated side or end wall openings may be eliminated, or that an opening may be "adjacent" to more than one wall. The prosecution history is brief and not helpful to resolving the meaning of the disputed claim language.

Under these circumstances, we construe the phrase "openings ... adjacent each of said side walls and end walls" as referring to structurally distinct openings that are provided adjacent to each of the railcar's four walls. Each opening is "adjacent" to only one wall, the nearest one to which it directs the downward flow of CO₂ gas. Thus, an opening "adjacent" to a side wall cannot also be an opening "adjacent" to an end wall. The patent does not contemplate the openings performing double duty in this manner. We therefore reject the district court's claim construction, which was inconsistent with the specification and drawings and rendered superfluous the claim requirement for openings adjacent to the end walls.

In GATC's railcar, the openings were all closest to and thus "adjacent" to the *side* walls. The endmost openings are in fact twelve times the distance to the end walls compared with their distance to the side walls. The car lacked "a plurality of openings ... adjacent each of said ... end walls," as required by the properly construed claims. We therefore hold that the district court clearly erred in finding literal infringement of claim 1 and dependent claims 2–3. *See Johnston v. IVAC Corp.,* 885 F.2d 1574, 1580, 12 USPQ2d 1382, 1386 (Fed.Cir.1989) ("Where a claim does not read on an accused device exactly, there can be no literal infringement."); *Mannesmann Demag Corp.,* 793 F.2d at 1282, 230 USPQ at 46 (literal infringement requires that every element of the patent claim be met).

Furthermore, the district court's finding of infringement under the doctrine of equivalents was also clearly erroneous, for two reasons. First, the finding violated the

principle that the doctrine may not be used to expand the scope of the patentee's right to exclude so as to encompass the prior art. *E.g., Key Mfg. Group, Inc. v. Microdot, Inc.,* 925 F.2d 1444, 1449, 17 USPQ2d 1806, 1810 (Fed.Cir.1991). Here, the AFFX 2002 railcar had all the elements of claim 1 except that its compartment for holding $CO_2$ snow had openings adjacent to only one side wall and it had no openings adjacent to the end walls. This design was known to be deficient because "hot spots" (areas of thawing) tended to form in the cargo area opposite the side where the $CO_2$ gas was introduced. Clearly those of ordinary skill in the art would have known that insufficient $CO_2$ gas was reaching this area. Thus, it would have been obvious to more uniformly cool the entire cargo area by providing openings along both side walls. The Kurth patent, in fact, disclosed a cryogenic railcar in which the compartment for holding the solid $CO_2$ had openings adjacent to both side walls. The AFFX 2002 and Kurth railcars were in the same field of endeavor as the claimed invention and were properly combinable prior art. The Kurth patent was not before the PTO during the prosecution of the '876 patent.

We are therefore convinced that the prior art fairly suggested a cryogenic railcar having the combination of features present in GATC's railcar, including a compartment having openings adjacent to both of the car's side walls. Thus, since allowing the claims to encompass GATC's car would cause the claims to cover subject matter obvious over the prior art, the car cannot be held to infringe the '876 patent under the doctrine of equivalents. *See Wilson Sporting Goods Co. v. David Geoffrey & Assocs.,* 904 F.2d 677, 14 USPQ2d 1942 (Fed.Cir.), *cert. denied,* 498 U.S. 992, 111 S.Ct. 537, 112 L.Ed.2d 547 (1990). As we stated in *Wilson Sporting Goods:*

> [A] patentee should not be able to obtain, under the doctrine of equivalents, coverage which he could not lawfully have obtained from the PTO by literal claims. The doctrine of equivalents exists to prevent a fraud on a patent, *not* to give a patentee something which he could not lawfully have obtained from the PTO had he tried. Thus, since prior art always limits what an

inventor could have claimed, it limits the range of permissible equivalents of a claim.

*Id.* at 684, 904 F.2d 677, 14 USPQ2d at 1948 (citation omitted); *see also Stewart–Warner Corp. v. City of Pontiac, Michigan,* 767 F.2d 1563, 1572, 226 USPQ 676, 682 (Fed.Cir.1985) (there can be no infringement under the doctrine when "the asserted range [of equivalents] would encompass the prior art at the very point at which the ... claims distinguish from that prior art").

Second, the district court's finding of infringement under the doctrine of equivalents was clearly erroneous because "[t]here can be no infringement as a matter of law if a claim limitation is totally missing from the accused device." *London v. Carson Pirie Scott & Co.,* 946 F.2d 1534, 1539, 20 USPQ2d 1456, 1459 (Fed.Cir.1991). GATC's railcar had no openings adjacent to the end walls, as required by the claims, nor did GATC substitute an equivalent structure. Cryo–Trans argues that its expert testified that "the endmost vents of the *center* row will provide a substitute for any ceiling vents eliminated by GATC." We disagree with Cryo–Trans that each of the endmost center row openings, located six feet from the nearest end wall, was equivalent to a "plurality" of openings adjacent to the end walls. They are much further from the end walls than the endmost openings in the side walls, which we have held do not satisfy the claim limitation. Thus, because the accused device lacked an equivalent to "a plurality of openings ... adjacent each of said ... end walls," there was no infringement under the doctrine of equivalents. *See London,* 946 F.2d at 1539, 20 USPQ2d at 1459; *Pennwalt Corp. v. Durand–Wayland, Inc.,* 833 F.2d 931, 937, 4 USPQ2d 1737, 1741 (Fed.Cir.1987) (in banc) ("A device that does not satisfy [a] limitation at least equivalently does not function in substantially the same way as the claimed invention."), *cert. denied,* 485 U.S. 961, 108 S.Ct. 1226, 99 L.Ed.2d 426 (1988); *Perkin–Elmer Corp. v. Westinghouse Elec. Corp.,* 822 F.2d 1528, 1532, 3 USPQ2d 1321, 1324 (Fed.Cir.1987) (courts may not "convert a multi-limitation claim to one of [fewer] limitations to support a finding of equivalency").

Accordingly, we reverse the district court's findings of literal infringement and infringement under the doctrine of equivalents.

## B. *Validity*

GATC argues that "[i]f the district court's claim construction is correct, then the '876 Patent is invalid" under 35 U.S.C. §§ 102 and 103. GATC contends, *inter alia*, that if claim 1 were construed to cover a railcar that had no openings adjacent to the end walls, the combination of the AFFX 2002 railcar with the Kurth patent would render the claim invalid for obviousness.

We have agreed with GATC, however, that the district court's claim construction was not correct. Thus, its obviousness argument directed to that claim construction is no longer pertinent. GATC has not argued or established that the prior art would have rendered obvious a cryogenic railcar having a compartment that included openings adjacent to *all four* walls, as required by the properly construed claims. We decline to speculate whether it would have been obvious to those of ordinary skill in the art to modify the AFFX 2002/Kurth railcar by adding openings adjacent to the end walls. Thus, the district court did not clearly err in concluding that GATC did not prove invalidity by clear and convincing evidence.

We have considered the parties' remaining arguments but find them either unpersuasive or unnecessary for resolution of the appeal. Among these arguments is GATC's claim of prior invention by James Moe and Tom Maxwell. Moreover, in view of our conclusion concerning infringement, we must vacate the award of damages and the permanent injunction. GATC's arguments concerning the correctness of the damages award are therefore moot.

## CONCLUSION

The district court erred as a matter of law in construing the claims and clearly erred in finding infringement. Accordingly, the court's decision finding infringement, awarding damages, and entering a permanent injunction is reversed. Its conclusion concerning validity is affirmed.

## COSTS

No costs.

***AFFIRMED-IN-PART AND REVERSED-IN-PART.***

MAYER, Circuit Judge, dissenting.

The district court correctly construed the only claim limitation in dispute: "[T]he term 'adjacent' as used in the '876 patent means 'not far off.'" The court then found that the openings nearest the end walls of General American Transportation Corporation's (GATC) accused railcar were "adjacent" to those walls and therefore literally infringed the claim. I see no error in claim construction or in the finding of infringement.

Claim limitations "will be given their ordinary meaning, unless it appears that the inventor used them differently." *ZMI Corp. v. Cardiac Resuscitator Corp.*, 844 F.2d 1576, 1579 (Fed.Cir.1988). This court's citations to the claim language and specification to support a meaning other than the ordinary meaning of "adjacent" are misplaced. The claims do require openings adjacent to both end walls and side walls, but they do not define how close to the wall those openings must be to be considered adjacent. Nor do the claims require an opening to be closer to one wall than another to be considered adjacent to a particular wall. The only hint that an opening should be configured in a specific manner comes in a discussion of the inventor's preferred embodiment. Although we construe claims in light of the specification, we do not import the specification wholesale into the claims. *Intervet Am., Inc. v. Kee–Vet Lab., Inc.*, 887 F.2d 1050, 1053, 12 USPQ2d 1474, 1476 (Fed.Cir.1989). It is improper to read the inventor's preferred arrangement as a claim limitation here.

This court's *de novo* claim construction would necessarily prevent a finding of infringement whenever a vent is nearer a side wall than an end wall. This cannot be. For example, a vent only an inch away from an end wall will not be considered "adjacent" to the end wall as long as the vent is less than an inch from a side wall. Given the dimensions at issue, surely a vent such a short

distance from an end wall is "adjacent" to that wall and must be infringing. The difference between this hypothetical and our case is only a matter of degree. The vent here was only 33 inches from the end wall of a railcar which is 812 inches long. The district court is in a much better position to evaluate this matter of degree.

The district court also correctly concluded that the claims were not obvious over the cited prior art, which it considered to include U.S. Patent No. 4,593,536 to Fink and Habel, the AFFX 2002 cryogenic railcar and variants thereof, U.S. Patent No. 3,561,226 to Rubin, and British Patent No. 399,678 to Kurth. It looked at the invention as whole and explicitly refused to "us[e] the patent or invention at issue as a guide to combine bits and pieces of earlier designs and then reach a conclusion of obviousness." *See Lindemann Maschinenfabrik GMBH v. American Hoist & Derrick Co.,* 730 F.2d 1452, 1462, 221 USPQ 481, 488 (Fed.Cir.1984) ("[T]he question is whether there is something in the prior art as a whole to suggest the desirability, and thus the obviousness, of making the combination."). The court concluded that "[t]here is no clear suggestion of combining different pieces of prior art to produce the invention claimed by the '876 Patent unless the patent is improperly used as a guide to make the combination." Again, I find no error in the district court's analysis of the prior art or in its finding that there was no motivation to combine the cited references. It was mindful that "[c]are must be taken to avoid hindsight reconstruction by using 'the patent in suit as a guide through the maze of prior art references, combining the right references in the right way so as to achieve the result of the claims in suit.' " *Grain Processing Corp. v. American Maize–Prods. Co.,* 840 F.2d 902, 907, 5 USPQ2d 1788, 1792 (Fed. Cir.1988) (citing *Orthopedic Equip. Co. v. United States,* 702 F.2d 1005, 1012, 217 USPQ 193, 199 (Fed.Cir.1983)).

This court relies principally on a combination of the AFFX 2002 railcar, which admittedly disclosed many of the elements of the '876 patent claim, and the Kurth patent, which disclosed openings in a dry ice bunker adjacent to both side walls of a railcar. This combination requires the precise measure of hindsight that the district court refused to supply. The evidence at trial showed that no one really understood the gas flow cooling mechanism of the AFFX 2002 cryogenic design. The Fink patent, which is based on the AFFX 2002, disclosed a system in which $CO_2$ gas supposedly exited the overhead bunker, flowed by convection down one side of the car, traveled underneath the load in the car, and then recirculated back up the other side of the car. If that were true, a second row of vents on the opposite side of the car would not only have been unnecessary, but likely would have been detrimental to the cooling convection flow that was thought to exist. There was thus no motivation to include the Kurth patent which disclosed openings on the opposite side walls of a railcar bunker.

The 1933 Kurth patent also is directed to the loading and cradling of pre-made dry ice. There is no indication that "$CO_2$ snow" which subsequently sublimates is ever created in the bunker shown in Kurth, and the testimony at trial was that Kurth disclosed a "cold plate" bunker which simply provides a large cold surface for cooling the air in the lading compartment below. The extremely small number of vents disclosed in Kurth was unlikely to provide an adequate cooling mechanism for the sublimation of a bank of "$CO_2$ snow." Given this testimony, I believe the district court could readily conclude that Kurth operated in a fundamentally different way from the other cryogenic cars cited as prior art. Without motivation to combine Kurth, the only reference which disclosed openings on both sides of a bunker, with the AFFX 2002, whose method of heat transfer was at best uncertain, GATC failed to prove by clear and convincing evidence that the '876 patent is obvious.

The district court's analysis is bolstered by the secondary considerations of nonobviousness. The court found that Cryo–Trans' " '876 patent design has been accepted by the industry" and that it enjoys a high degree of commercial success. It also found that "[t]he '876 patent design solved a long felt transportation problem for frozen food processors, who were searching for a viable solution since 1980 to the poor economic and

maintenance viability problem of old railroad mechanical cars."

The district court further found that in late 1990, GATC became aware of Cryo–Trans' commercially successful cryogenic railcar patent, and "decided it had to promptly get into the cryogenic railcar market and copy Cryo–Trans' high cube car." To this end, GATC obtained a copy of the original drawings of the Cryo–Trans car from the company which manufactured the railcar shell, and then moved the shell to a second manufacturer which completed the interior of the car along with identical cars that were being completed for Cryo–Trans.

GATC admitted that its original prototype infringed the '876 patent. After Cryo–Trans filed this suit, GATC merely blocked off several of the openings closest to the ends of its cars. At trial, one of GATC's own engineers admitted that the accused device did not work any differently than the admittedly infringing first prototype. The trial court was surely correct when it concluded that "GATC copied the design of the Cryo–Trans high cube car after the commercial viability of the technology was proven by Cryo–Trans." None of these findings are clearly erroneous.

The district court did not err in holding that the '876 patent "represents a significant improvement from the relevant prior art and is not obvious from a review of the relevant prior art." Eschewing the aid of hindsight to combine the cited references, and with appropriate deference to the district court's factual findings, I would affirm the judgment in its entirety.