THE BOLER COMPANY, Plaintiff,

v.

NEWAY ANCHORLOCK, INC., Defendant.

No. 5:99–CV–1934.

United States District Court, N.D. Ohio, Eastern Division.

April 11, 2000.

David L. Drechsler, David P. Dureska, Buckingham, John B. Schomer, Karen K. Grasso, Mark J. Skakun, Walter A. Lucas, Buckingham, Doolittle & Burroughs, LLP, Akron, OH, for Boler Co., Plaintiff.

George T. Williams, John E. McGarry, Michael F. Kelly, Rader, Fishman & Grauer, Grand Rapids, MI, Glenn E. Forbis, Rader, Fishman & Grauer, Bloomfield Hills, MI, John C. Fairweather, Brouse & McDowell, Akron, OH, John W. Solomon, Brouse & McDowell, Akron, OH, for Neway Anchorlok Intern., Inc., Defendant.

## JUDGEMENT

GWIN, District Judge.

On March 6, 2000, Plaintiff The Boler Company ("Boler") moved this Court for summary judgment as to its claim that Defendant Neway Anchorlok International Inc. ("Neway") infringed claim 16 of U.S. Patent No. 5,366,237 (" '237 patent"), owned by Boler [Doc. 65]. On that same date, Neway filed a motion for summary judgment as to its defenses that it does not infringe the '237 patent and its counterclaim that the '237 patent is unenforceable because Boler acted inequitably in prosecuting the '237 patent [Doc. 66].

Because the Court finds no material evidence supporting Boler's claim that Neway infringed the '237 patent, the Court gives Neway judgment on Boler's infringement claim. With regard to Neway's counterclaim, the Court finds that factual issues exist and Neway is thus not entitled to summary judgment on its claim that the '237 patent is invalid because of Boler's claimed inequitable conduct.

### I. Background

This patent infringement action involves a popular suspension system known generally in the industry as "trailing arm suspensions" or "trailing beam suspensions." These suspensions have been used on heavy-duty truck trailers for many years. The patent at issue in this case, the '237 patent, claims to improve a trailing beam suspension system. U.S. Patent and Trademark Office granted the patent on November 22, 1994.

Trailing beam suspension systems generally include two beams attached at their forward ends to the truck trailer frame. At the other end of each beam is a spring between the end of the beam and the trailer frame. Among other options, these springs can be coiled steel springs or air springs. Trailing beam suspension systems also have an axle that traverses the trailer and rests perpendicular to the beams. A wheel is attached to each end of the axle. These suspension systems cushion the trailer.

The '237 patent describes a particular method of assembling a trailing beam suspension. In this description, the '237 patent teaches a structure that requires, among other things, (1) a "means for rigidly connecting" the axle to the beam, and (2) a "means for directly attaching" various brake components to the beam.

Plaintiff Boler owns the '237 patent. In the present action, Boler insists that Defendant Neway infringed claim 16 of the '237 patent. Specifically, Boler says Neway's iPAC suspension system infringes the '237 patent by rigidly connecting the axle and the beam and by directly attaching the brake chamber to the beam.

Neway says its iPAC suspension system is materially different from the system described in the '237 patent. Specifically, Neway argues that the iPAC suspension system has a resilient connection between the beam and the axle, rather than the rigid connection described in the '237 patent. Also, Neway says its iPAC suspension system attaches the brake chamber to the axle, rather than to the beam as taught in the '237 patent.

Further, even if its iPAC suspension system infringes on the '237 patent, Neway argues that Boler's inequitable conduct in prosecuting the '237 patent renders the patent invalid and unenforceable. According to Neway, Boler omitted material information with the intent to deceive the United States Patent and Trademark Office when it filed for its '237 patent.

Both parties now seek summary judgment on Boler's patent infringement claim. Neway also seeks summary judgment on its claim that the '237 patent is invalid and unenforceable. The Court now considers these motions.

## II.   Summary Judgment Standard

Pursuant to Federal Rule of Civil Procedure 56, summary judgment shall be rendered when requested if the evidence presented in the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. In assessing the merits of a summary judgment motion, this Court shall draw all justifiable inferences from the evidence presented in the record in the light most favorable to the nonmoving party. *See Woythal v. Tex–Tenn Corp.*, 112 F.3d 243, 245 (6th Cir.), *cert. denied*, 522 U.S. 967, 118 S.Ct. 414, 139 L.Ed.2d 317 (1997).

However, an opponent to a motion for summary judgment may not rest upon the mere allegations or denials of his pleadings, but must set forth, through competent and material evidence, specific facts showing that there is a genuine issue for trial. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Miller v. Lorain County Bd. of Elections*, 141 F.3d 252, 256 (6th Cir.1998) (same).

Accordingly, viewing the evidence in the light most favorable to the nonmoving party, the Court should decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251, 106 S.Ct. 2505.

Summary judgment is as appropriate in a patent case as in any other. *See Phonometrics, Inc. v. Northern Telecom Inc.*, 133 F.3d 1459, 1463 (Fed.Cir.1998) ("Although an infringement analysis usually involves both issues of law and questions of fact, summary judgment of noninfringement may still be proper."); *Conroy v. Reebok Intern., Ltd.*, 14 F.3d 1570, 1575 (Fed.Cir. 1994); *Avia Group Int'l,Inc., v. L.A. Gear California, Inc.*, 853 F.2d 1557, 1561 (Fed. Cir.1988). After the claims at issue have reasonably been construed, a district court may grant summary judgment "when it is shown that the infringement issue can be reasonably decided only in favor of the movant, when all reasonable factual inferences are drawn in favor of the non-movant." *Kraft Foods, Inc. v. International Trading Co.*, 203 F.3d 1362, 1366 (Fed.Cir. 2000) (quoting *Voice Technologies Group, Inc. v. VMC Systems, Inc.*, 164 F.3d 605, 612 (Fed.Cir.1999)).

## III.   Discussion

### A.   Patent Infringement

■ A determination of infringement requires a two-step analysis. "First, the claim must be properly construed to determine its scope and meaning. Second, the claim as properly construed must be compared to the accused device or process." *Ethicon Endo–Surgery, Inc. v. U.S. Surgical Corp.*, 149 F.3d 1309, 1315 (Fed.Cir. 1998); *Bai v. L & L Wings, Inc.*, 160 F.3d 1350, 1353 (Fed.Cir.1998).

#### 1.   Claim Construction

■ The first step, claim interpretation, is solely a question of law. Therefore, the construction of a patent is exclusively the province of the court, rather than the jury. *See Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 383–91, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996); *Cybor Corp. v. FAS Technologies, Inc.* 138 F.3d 1448, 1451 (Fed.Cir.1998).

Claim 16 of the '237 patent describes the following structure:

> In an axle bearing suspension system for a wheeled vehicle wherein external forces imposed on the vehicle to which said suspension system is attached result in torsional forces being imposed on said axle, said suspension system includ-

ing a brake actuation mechanism comprised of a brake chamber, an S-cam assembly comprising an S-cam bearing, a slack adjuster, an elongated beam, a pneumatic bellows located on said beam, a hanger bracket located at one end of said beam, *means for rigidly connecting said axle to said beam,* and a pivot connection for resiliently connecting said beam to said hanger bracket, the improvement comprising: means located on said beam for attaching said S-cam bearing directly to said beam, *and means for directly attaching said brake chamber to said beam.*

U.S. Patent No. 5,366,237, col. 12, ll. 22–36 (emphasis added).

■ Claim 16 of the '237 patent is expressed in means-plus-function format. Where a patent applicant chooses to use "means plus function" expressions, federal patent law says:

An element in a claim for a combination may be expressed as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof, and such claim shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof.

35 U.S.C. § 112. Thus, a functional claim element's "broad literal language ... must be limited to only those means that are 'equivalent' to the actual means shown in the patent specification." *Warner–Jenkinson Co., Inc. v. Hilton Davis Chemical Co.,* 520 U.S. 17, 18, 117 S.Ct. 1040, 137 L.Ed.2d 146 (1997).

In an order filed March 14, 2000, this Court construed claim 16 of the '237 patent. In that decision, this Court construed claim 16 to require a rigid connection between the axle and the beam:

the Court rules that claim 16 discloses a function of rigidly connecting an axle to the beam.... Guided by the doctrine of claim differentiation, the Court construes claim 16 of the '237 patent to be any structure whereby the axle and beam are connected, and at the point of connection, there is no significant move-

ment of the beam and axle relative to each other, and its equivalent thereto.

Court's March 14, 2000, Order at pp. 15–16

The Court also construed claim 16 of the '237 patent as requiring a structure that places the brake chamber attached to the beam, not to the axle:

[T]he Court finds that 'means for directly attaching' should be construed to require a direct attachment of the brake components *to the beam* (element 59 of the '237 patent) *and not to the axle.* In claim 16 of the '237 patent, its inventor says that attachment of the brake components on the beam distinguished the invention from the prior art which had attached the brake chamber and S-cam bearing to the axle. Accordingly, the 'means for directly attaching' the brake components to the beam does not allow attachment to the axle.

Court's March 14, 2000, Order at p. 17 (emphasis added).

Using this claim construction, the Court considers whether Defendant Neway's iPAC suspension system infringes Plaintiff Boler's '237 patent.

### 2. Infringement

Plaintiff Boler says that Defendant Neway's iPAC suspension system infringes the '237 patent both literally and under the doctrine of equivalents. The Court reviews both arguments.

#### a. Literal Infringement

■ To find literal infringement, each element of the patent claim must be found in the accused device. *See Pennwalt Corp. v. Durand–Wayland, Inc.,* 833 F.2d 931, 934 (Fed.Cir.1987). "Where a claim does not read on an accused device exactly, there can be no literal infringement." *Johnston v. IVAC Corp.,* 885 F.2d 1574, 1580 (Fed.Cir.1989); *General American Transp. Corp. v. Cryo–Trans. Inc.,* 93 F.3d 766, 770 (Fed.Cir.1996).

■ Plaintiff Boler says that Neway's iPAC suspension system literally infringes claim 16 of the '237 patent in that it con-

tains the two primary elements of that claim. First, Boler argues that, like the '237 patent, the iPAC suspension system calls for a rigid attachment of the axle to the beam. With regard to this argument, the Court finds that Boler's argument lacks sufficient evidentiary support.

The '237 patent states that there are generally two mutually-exclusive ways to connect axles to beams in trailing beam suspensions: resiliently or rigidly.[1] In seeking to differentiate the '237 patent from earlier suspension systems, Plaintiff Boler emphasized that the suspension system described in the '237 patent improved prior systems by altering the manner in which the axle is connected to the beam. Whereas earlier suspension systems, such as that described in U.S. Patent No. 3,332,-701 ("Masser '701 patent"), call for a resilient axle-beam connection, the '237 patent describes a rigid connection.

Contrary to Boler's suggestion, Defendant Neway's iPAC suspension system is more like the resilient axle-beam connection described in the Masser '701 patent than the rigid connection taught in the '237 patent. Like the Masser '701 patent, the iPAC suspension system does not connect the axle directly to the beam. Instead, an adapter is attached to the axle. This axle adapter is then connected to the beam by using two bushed pins. The rubber bushings on these pins permit, and are intended to permit, the axle and beam to move relative to each other. Thus, while the axle is firmly attached to the adapter, the adapter is only resiliently attached to the beam. Because the axle is connected to the beam only through the adaptor, and because the adaptor is resiliently, not rigidly, connected to the beam, the axle-beam connection is not rigid.

Boler fails to offer sufficient evidence to create a genuine issue of fact as to its claim that the iPAC suspension system connects the axle and the beam in exactly the same manner as the '237 patent. Bol-

er thus cannot show that each and every element of claim 16 is found exactly in the iPAC suspension system. As a result, Boler's literal infringement claim must fail.

Even if it could show that the iPAC suspension system mirrored the '237 patent's rigid connection of the axle and the beam, Boler would nevertheless not prevail on its literal infringement claim. As explained below, the evidence in this case belies Boler's argument that the iPAC suspension system contains a second primary element of claim 16, *i.e.*, the direct attachment of the brake chamber to the beam.

Like the rigid axle-beam attachment, Boler emphasized the direct attachment of the brake chamber to the beam in seeking to obtain the '237 patent. According to Boler, this direct attachment represented an improvement over prior suspension systems because it avoided the stress risers that could occur when the brake chamber was welded to the axle.

In contrast, the iPAC suspension system does not connect the brake chamber to the beam. Instead, the iPAC suspension system attaches the chamber to the axle adaptor. As noted above, this adapter is firmly connected to the axle, but only resiliently attached to the beam. Thus, Neway's iPAC suspension system does not call for the type of direct attachment between the brake chamber and the beam contemplated by the '237 patent.

For these reasons, the Court finds that Boler has failed to meet its burden of presenting evidence on its literal infringement claim sufficient to withstand summary judgment.

### b. Doctrine of Equivalency

■ Even when, as here, an accused device does not literally infringe a patent claim, the device may still infringe under the doctrine of equivalents. To infringe under the doctrine of equivalents, each claim element must have a corresponding

1. The '237 patent describes the connection of axle to the beam alternatively either it is rigid or it is resilient: "The axle may be connected to the beam rigidly or resiliently" '237 patent, col. 1, ll. 29.

element in the accused device that performs substantially the same function in substantially the same way to achieve substantially the same result. *See Warner–Jenkinson Co., Inc. v. Hilton Davis Chemical Co.,* 520 U.S. 17, 117 S.Ct. 1040, 137 L.Ed.2d 146 (1997).

■ The doctrine of equivalents prevents ₍a "fraud on the patent," *Graver Tank & Mfg. Co., Inc. v. Linde Air Products Co.,* 339 U.S. 605, 608, 70 S.Ct. 854, 94 L.Ed. 1097 (1950). Specifically, the doctrine prevents an infringer from stealing the benefit of the invention by making minor changes to the patent's teaching.

■ The doctrine of equivalents requires that the accused product contain each limitation of the claim or its equivalent. *See Warner–Jenkinson Co, Inc. v. Hilton Davis Chemical Co.,* 520 U.S. 17, 40, 117 S.Ct. 1040, 137 L.Ed.2d 146 (1997). An element in the accused product is equivalent to a claim element if the differences between the two are "insubstantial" to one of ordinary skill in the art. *See id.* "Although equivalence is a factual matter normally reserved for a fact-finder, the trial court should grant summary judgment in any case where no reasonable fact finder could find equivalence." *Cortland Line Co., Inc. v. Orvis Co., Inc.,* 203 F.3d 1351, 1359–60 (Fed.Cir.2000) (quoting *Sage Prods., Inc. v. Devon Indus., Inc.,* 126 F.3d 1420, 1423 (Fed.Cir.1997)).

■ The doctrine of equivalents has limits. It cannot be used to ignore the actual language of the patent. *See K–2 Corp. v. Salomon S.A.,* 191 F.3d 1356, 1367 (Fed.Cir.1999). This Court must closely follow the text of the claim: "[e]ach element contained in a patent claim is deemed material to defining the scope of the patented invention, and thus the doctrine of equivalents must be applied to individual elements of the claim, not to the invention as a whole." *Id.* (citing *Warner–Jenkinson,* 520 U.S. at 29, 117 S.Ct. 1040). Therefore, the doctrine of equivalents cannot be used to vitiate an element from the claim in its entirety. *See WarnerJenkinson,* 520 U.S. at 29, 117 S.Ct. 1040.

■ Here, Plaintiff Boler says that Defendant Neway's iPAC suspension system contains the functional equivalent of the '237 patent's rigid axle-beam connection and direct attachment between the beam and the brake chamber. As explained below, the Court finds that Boler has failed to support its argument with evidence sufficient to withstand summary judgment.

With regard to the axle-beam connection, the iPAC suspension system is engineered to achieve a substantially different connection than that called for in the '237 patent. Like the '701 Masser patent, the iPAC suspension system provides for a resilient connection between the axle and the beam. This resilient connection is achieved by connecting the axle and beam with an adapter. While the axle is firmly clasped to the adapter, the beam is attached to the adapter with two bushed pins. The rubber bushings used with the pins provide the flexibility required to allow the axle and the beam to move relative to one another.

In contrast, the '237 patent calls for a rigid connection between the axle and the beam. The purpose of this rigid connection relates to the '237 patent's movement of the brake chamber from its ordinary placement on the axle to the beam. The brake chamber must remain in constant alignment with the axle, or the brakes may fail to operate properly. When the brake chamber is attached to the beam, the only way to ensure that the chamber remains in a constant position relative to the axle is to rigidly connect the axle and the beam.

The '237 patent specifications describes the importance of a rigid axle-beam connection upon the function of the brake chamber:

The axle-to-beam connection, as described above, is rigid. This is important. To be safe, brake chambers and S-cam assemblies must remain in the

same position relative to the axle, or the brakes may not operate properly.

'237 patent, col. 8, ll. 11–15.

■ As described above, the iPAC suspension system uses an axle-beam connection more similar to the earlier Masser '701 patent than to the '237 patent.[2] The doctrine of equivalents may not be used to expand the scope of Neway's right to exclude so as to encompass prior art, such as that of the Masser '701 patent. *General American Transp. Corp. v. Cryo-Trans, Inc.,* 93 F.3d 766, 770–71 (Fed.Cir. 1996). The Federal Circuit described this rule in *Wilson Sporting Goods Co. v. David Geoffrey & Assocs.,* 904 F.2d 677, 684 (Fed.Cir.1990) cert. denied, 498 U.S. 992, 111 S.Ct. 537, 112 L.Ed.2d 547(1990):

[A] patentee should not be able to obtain, under the doctrine of equivalents, coverage which he could not lawfully have obtained from the PTO by literal claims. The doctrine of equivalents exists to prevent a fraud on a patent, not to give a patentee something which he could not lawfully have obtained from the PTO had he tried. Thus, since prior art always limits what an inventor could have claimed, it limits the range of permissible equivalents of a claim.

*Id.* at 684.

The evidence shows that the axle-beam connection featured in the '237 patent is substantially different from that described in the iPAC suspension system. Accordingly, Boler cannot succeed on its claim of infringement under the doctrine of equivalents.

■ Boler's infringement claim also fails in that the '237 patent and the iPAC suspension system substantially differ with regard to the attachment of the brake chamber. The '237 patent attaches the brake chamber directly to the beam. In seeking to obtain the '237 patent, Boler said that attaching the brake chamber to the beam without any intervening attachments was a "unique feature" of the suspension system described in the '237 patent:

"[The specified figures] illustrate yet another unique feature of the instant invention, i.e. the ability to attach the brake actuation mechanism to the beam and thereby *avoid entirely* any welding or other type of attachment to axle ... between the beams, except for the rigid axle-to-beam connection..... [T]he beam now becomes a better location for attaching the brake chamber and S-cam assembly as the axle was in the prior art, because the stress risers, due to welding attachment brackets to the axle in an area of high torsional stress, are eliminated."

'237 patent, col. 8, ll. 6–24. (emphasis added).

Unlike the '237 patent, the iPAC suspension system does not directly attach the brake chamber to the beam. Indeed, the resilient connection between the axle and the beam in the iPAC suspension system precludes mounting the brake chamber to the beam. As previously explained, to ensure proper brake functioning, the brake chamber must be kept in constant alignment with the axle. The '237 patent can maintain this alignment while mounting the brake chamber on the beam because the axle and the beam are rigidly connected. However, because it employs a resilient axle-beam connection, the iPAC suspension system can keep the brake chamber and the axle aligned only by mounting the chamber either directly on the axle or on a structure firmly attached to the axle.

The iPAC suspension system adopts the latter option. In the iPAC suspension system, the brake chamber is attached to the

---

**2.** The Masser '701 patent uses a "control arm" (18) rigidly affixed to a bracket (20) at the front and attached to the axle through use of "bracket plates" (36). This "bracket plate" then affixes to the beams (18) by pins (46) that is surrounded in a sleeve (52) by a "body of elastometric material such as rubber or the equivalent." Masser '701 patent, col. 2, ll. 27–28.

axle adapter. This adapter is firmly attached to the axle.

Boler suggests that because this adapter is also attached to the beam, the iPAC suspension system directly attaches the brake chamber to the beam. However, the adapter is only resiliently connected to the beam. Thus, the connection between the brake chamber and the beam is at best indirect.

For the reasons set forth above, the Court finds that no genuine issues of fact exist with regard to Boler's infringement claim under the doctrine of equivalents and that Neway is entitled to judgment as a matter of law.

### B. Inequitable Conduct

Patent applicants are held to a strict duty of candor in applying for a patent. Specifically, applicants must disclose to the United States Patent and Trademark Office all material information within their knowledge regarding the patent issue presented in the application. *See* 37 C.F.R. § 1.56(a) (2000); *Molins PLC v. Textron, Inc.*, 48 F.3d 1172, 1178 (Fed.Cir. 1995). Failure to disclose such information, when coupled with an intent to deceive, constitutes "inequitable conduct." *Baxter Int'l, Inc. v. McGaw, Inc.*, 149 F.3d 1321, 1327 (Fed.Cir.1998). A patent obtained through inequitable conduct is invalid and unenforceable. *See Kingsdown Medical Consultants, Ltd. v. Hollister, Inc.*, 863 F.2d 867, 874 (Fed.Cir.1988).

To decide whether a patent applicant has acted inequitably, the Court must determine whether the withheld reference was material and whether the evidence shows the applicant intended to mislead the Patent Office. *See Halliburton Co. v. Schlumberger Technology Corp.*, 925 F.2d 1435, 1439 (Fed.Cir.1991). After finding the threshold levels of materiality and intent, the Court must make an equitable judgment as to whether, in light of all the relevant circumstances, "the conduct of the patentee is so culpable that its patent should not be enforced." *Hewlett–Packard Co. v. Bausch & Lomb, Inc.*, 882 F.2d 1556, 1566 (Fed.Cir.1989).

A party claiming that a patent is not enforceable because it had been obtained through inequitable conduct bears the burden of proof. Inequitable conduct must be shown by clear and convincing evidence. *See Semiconductor Energy Laboratory Co., Ltd. v. Samsung Electronics Co., Ltd.*, 204 F.3d 1368, 1373 (Fed.Cir. 2000).

Here, Defendant Neway says that Plaintiff Boler engaged in inequitable conduct when securing the '237 patent. According to Neway, Boler had developed and marketed a trailing beam suspension known as the "TDC suspension" prior to applying for the '237 patent, yet failed to disclose it to the Patent and Trademark Office.

Like the suspension system described in the '237 patent, the TDC suspension attached the axle to the beam by inserting the axle through orifices in the side walls of each beam. Though many of the same inventors who developed the TDC suspension also developed the '237 patent suspension system, Boler did not disclose any information regarding the TDC suspension when applying for the '237 patent. Neway argues that Boler's failure to identify the TDC suspension in its patent application constitutes a material omission made with the intent to deceive the Patent and Trademark Office.

Boler acknowledges that it failed to disclose any information regarding the TDC suspension. However, Boler insists this omission was not material to the '237 patent.

Information is "material" when there is a substantial likelihood that a reasonable examiner would have considered the information important in deciding whether to allow the application to issue as a patent. *See Molins*, 48 F.3d at 1179. However, an otherwise material reference need not be disclosed if it is merely cumulative of or less material than other references already disclosed. *See Halliburton Co. v. Schlumberger Technology Corp.*, 925 F.2d 1435, 1440 (Fed.Cir.1991).

Boler says that the TDC suspension is less material than other information it disclosed in seeking the '237 patent. In particular, Boler says that it disclosed several other patents that more closely resemble the '237 patent than does the TDC suspension. Boler says that if these other disclosures were not considered material to Boler's prosecution of the '237 patent, more remote prior art, such as the TDC suspension, could not be material.

However, Neway disputes Boler's characterization of the TDC suspension as less material than Boler's other disclosures. Neway says that because of its description of a hollow axle extending through orifices in the sidewalls of two beams, the TDC suspension most closely resembles the suspension system described in the '237 patent.

The Court finds that there exists a genuine factual dispute as to the materiality of the TDC suspension with regard to the '237 patent. Having so found, the Court denies Neway's motion for summary judgment on its inequitable conduct claim.

IV. Conclusion

For the reasons set forth above, the Court grants Defendant Neway's motion for summary judgment with regard to Plaintiff Boler's patent infringement claim. However, the Court denies Neway's motion for summary judgment as to its counterclaim alleging inequitable conduct on the part of Boler.

IT IS SO ORDERED.